From: Juan G. Evora, Pro Se.
a/k/a Abdul Qadeer Asadullah Mudahid
Medium Moran Facility
P.O. Box 8274
Cranston, R.I. 02920

To: Clerk of Court
United States District Court
For The District of Rhode Island
Providence, R.I. 02903-1779

August 28, 2007

RE: Evora v. Boyd, et al. Civil Action No. 00322-S-JH

Dear Clerk:

I send this letter with the utmost respect for you and the Honorable Court. Enclosed please find a more definitive civil action complaint. Please file with the Court, thank you. Not able to obtain waiver of summons forms for Defendants', please send required forms.

Respectfully Submitted,

Juan G. Evora

Juan G. Evora, Pro Se
a/k/a Abdul Qadeer Asadullah Mudahid

UNITED STATES DISTRICT COURT
District of Rhode Island (Providence)

Juan G. Evora
a/k/a
Abdul Qadeer Asadullah Mujahid
Plaintiff

United States District Court
Civ. Action No.: 00322-S-JH

V.

Warden Stephen Boyd,
Lt. Meunier,
William Begones, et al.

JURY TRIAL DEMANDED

## CIVIL RIGHTS COMPLAINT

This is civil action filed pursuant to 42 USCA 1983, and 42 USCA 1985, 1986 by the Plaintiff, Juan G. Evora, a/k/a Abdul Qadeer Asadullah Mujahid, an inmate at the Rhode Island Department of Correction Medium Moran Facility, in Cranston, Rhode Island, alleging violations of his constitutional rights by the named Defendants. The Plaintiff is seeking declaratory judgment, compensatory and punitive damages, and injunctive relief. The Plaintiff seeks trial by judge.

## JURISDICTION

1. This is a civil rights action pursuant to 42 USCA 1983, and 42 USCA 1985, 1986. This Court has jurisdiction under 28 USCA 1331 and 1343 (3). The Plaintiff also invokes the pendent jurisdiction of this Court to decide and hear matters relating to state law, as well as claims relating to policies and practices of Rhode Island Department of Corrections.

## PARTIES

2. The Plaintiff is an incarcerated inmate at the Rhode Island Department of Corrections Medium Moran Facility, in cranston, Rhode Island. He is presently housed in Medium Moran Facility Segregation Unite, and Classified to Maximum Security Facility.

3. Defendant Stephen Boyd, is the Warden of Medium Moran Facility, in Cranston, Rhode Island. He is sued in his official and individual capacity. Defendant #1.

4. Defendant Lt. Meunier, is an Lieutenant of Medium Moran Facility, in Cranston, Rhode Island. He is sued in his official and individual capacity. Defendent #2.

5. Defendant William Begones, is an Investigator of Rhode Island Department of Corrections, in Cranston, Rhode Island. He is sued in his official and individual capacity. Defendant #3.

## TRAVEL OF FACTS

6. On the night of July 17, 2007, during the 7:15 pm and 8:15 pm yard rec., while playing basketball, in the summer league, inmate Crumel kept on inviting me to suck his "----" (penis) numerous times, and then stated he wanted to "----" me up (beat me up (fight)). Upon entering the Med. Moran Facility CR-Module on July 17, 2007, [redacted] after yard being closed, inmate Crumel

did in fact proceed to call me on to fight with him, and repeatedly yelled out very loud for me to suck "his ----" (penis). At this time I walked away again and locked myself in my cell.

7. Throughout the night inmate Crumel made a song of how he wanted me to suck his "----" (penis), and how he was going to "----" me up (beat me up in the morning) (due physical bodily harm to me).

8. A proper investigation by William Begones, would have been to question the "70" inmates who witnessed all this. No investigation done, due to utilizing the situation as a form of reprisal tactic, behind me filing a federal civil action complaint against D.O.C. and staff members in 2006.

9. On the morning of July 18, 2007, during the morning feeding (7:30 am) middle chow hall, inmate Crumel once again invited me to suck his "----" (penis), it was at this pointed I stated, "you want a head-up (fair fight) you got it." Plaintiff and inmate Crumel then walked out of the chow hall together to handle the matter of the head-up (fair fight), he went to medical unit line, I went to take a shower in CR-Module.

10. On the morning of July 18, 2007, after morning feeding, and shower. Inmate Crumel put together a few look-outs, and awaited our head-up (fair fight). "I the Plaintiff complied with inmate Crumel's wishes, all but for sucking his penis." Inmate Crumel and I squared off and went head-up (engaged in a fair fight), and there are numerous witnesses to support this fact.

11. Any proper investigation would have led to the questioning of the numerous witnesses. This would have also been in compliance with the "1980" version of the Morris Rules, the only rules the Federal District Court of the United States for the District of Rhode Island acknowledges.

12. Being held in segregation unit under investigation per order of Capt. Bannon, on July 18, 2007, at approx. 9:15 am. I could not coerce witnesses.

13. Both William Begones and Lt. Meunier violated my constitutional right to due process, that led to my liberty being taken, and religious practice, worship, and free exercise being violated. I was brought before Lt. Meunier's kangaroo disciplinary board hearing and denied the right to call witnesses in my defense. Nor did Begones or Lt. Meunier check the nature of the witnesses testimony (Crumel's testimony). This

Clearly laid out in the "1980" version of the Morris Rules, and in Wolff v. McDonnell, U.S. Supreme Court case, in direct regards to the disciplinary procedures: Inmate Code of Discipline Policy 11.01-4 Doc; 12/13/04 replacing the "1972" Morris Rules, the United States District Court of Rhode Island "only" acknowledges the "1980" version of the Morris Rules that have replaced the "1970" version of the Morris Rules.

14. To the best of my knowledge on 7/20/2007, William Begones, investigator (S.I.U.) came to speak with me, William Begones stated, "as far as I see it it was a head-up fight, no more then 21-days segregation". Plaintiff stated, "I never bit Crumel, and I invoke my fifth amendment right due to what happen with me and James Grilli." At this point William Begones stated, "I would no do such a thing, your not being state charged, it was a head-up fight".

15. Lt. Hollis read me the booking upon 7/23/07, plead not guilty, waived 24 notice, and requested three (3) witnesses in my defense. Plaintiff then request for Lt. Hollis to, "Look at the video surveillance tapes, and speak to the numerous witnesses in CR-Module, you will see with both Squared off and went head-up (fair fight), and during this time the I.D. bage scratched the face of inmate Crumel, and

we both hit the desk also." "We both engaged in the head-up (Fair-Fight), and Crumel even had look outs watching for officers." I then informed him that it was over and done with by 8:15 am on the morning of July 18, 2007.

16. While in the Rec. Yard at around approx. 9:00 am, I was trying to call my daughter being it was her birthday, and I had visits this day also. While at the telephones in yard, in the front of two correctional officers, inmate Crumel and two friends tried to jump me. The two officers that witnessed this, then called Capt. Bannon from yard shed. It was at 9:15 am, July 18, 2007, I was ordered to hang up telephone and turn around and cuff up. Plaintiff and inmate Crumel had been placed under investigation by Capt. Bannon.

17. The procedures taken have been due to reprisal tactics, for filing the federal civil action complaint.

## ARGUMENT / MEMORADUM OF LAW

18. The Supreme Court held in Wolff v. McDonnell that due process safeguards must be observed in prison disciplinary proceedings. see Wolff v. McDonnell, 418 U.S. 539, 556-59, 94 S. Ct. 2963 (1974). The prisoners in Wolff had been deprived of statutory "good-time", a state-created liberty interest, but the Courts

stated that due process requirements also applied to placing prisoners in solitary confinement. See Wolff v. McDonnell, 418 U.S. at 571-72 n.19. Since Wolff, Courts have pointed out that disciplinary rules themselves create a liberty interest protected by due process.

19. In Wolff, the Court held that due process entitles prisoners facing loss of statutory good time to notice of the charges, a written statement of the evidence behind a decision and the reasons for the punishment imposed, a limited right to call witnesses and present documentary evidence at a hearing, and in certain cases the assistance of a counsel substitute. See Wolff v. McDonnell, 418 U.S. at 563-71. Plaintiff avers none of the above was afforded to him, and Plaintiff faced a Kangaroo disciplinary hearing, held by Lt. Meunier.

20. The liberty that should have been protected by due process, being Plaintiff lost minimal recreation, religious services, Job, and program activity. Therefore Plaintiff is entitled to the full range of Wolff procedural rights. Plaintiff was subjected to the Kangaroo disciplinary board hearing, where Plaintiff in violation of both Wolff and the Morris Rules, "1980" version of Morris Rules. Avers the 90 days segregation, 90 days loss of earned good time credits, and the illegal downgrade board held by

Best Lachmann, and C.O. Joe Souza. Should not have been done without affording Plaintiff due process at disciplinary hearing board, and there never was any classification board hearing in compliance with the "1980" version of Morris Rules, and Rhode Island General Laws § 42-56-30. Classification board.

21. Plaintiff was denied witnesses, when clearly, it was put down that Plaintiff requested witnesses by Lt. Hollis, see exhibit (A) attached. I was also denied counsel, as Lt. Hollis put down request for representation, see exhibit (A) attached.

22. Plaintiff avers, prisoners have the right to call witnesses when doing so is not "duly hazardous to institutional safety or correctional goals." see Wolff v. McDonnell, 418 U.S. 539, 566, 94 S. Ct. 2963 (1974). Courts have agreed that witnesses to be called as defense witnesses, should be called to the hearing to give testimony. see Bartholomew v. Watson, 665 F.2d 915, 917-18 (9th Cir 1982) (witnesses must appear at the hearing); with Hrbek v. State, 478 N.W. 2d 617, 619 (Iowa 1991) ("An unjustified refusal to permit live testimony of a defense witness... will warrant reversal").

23. It is clearly evident that Lt. Meuniers hearing, was in all reality a "Kangaroo disciplinary board". Lt. Meunier did all humanely possible to cover up any and all wrong doing of inmate Crumel, along with William Begones, investigator. When reports failed to reflect testimony of witnesses interviewed by Begones.

24. It is evident by what the record "fails" to reflect, and what the record should reflect. Lt. Meunier abused his power of authority, and did in fact commit his prison, misrepresentation, fabricated and altered the report of Lt. Hollis, see Exhibit (A) and (B) attached, it is transparent Plaintiff requested witness, and Lt. Meunier, altered the reports and put witnesses not requested.

25. William Begones was in fact one in violation of the "1980" version of the Morris Rules, no proper investigation of any kind, done by William Begones. Mr Begones never interview any witnesses. Nor did Begones provide my (Plaintiff's) true statement, given by the Plaintiff.

26. Therefore Lt. Meunier and William Begones are both held in contempt of the "1980" version of the Morris Rules.

27. Lt. Meunier and William Begones are in violation of Code of Ethics 3.14-1 DOC page 11 of 13: g. Dishonesty; (2) Providing false or misleading statements or representations, either verbal or written, on any official forms, reports, logs, affidevits, or other documents. Page 10 of 13 Code of Ethics: c. Dereliction of Duty; (3) failure to follow policies, procedures, protocols, and post orders. (5) carelessness, negligence, or poor performance overall.

28. William Begones dereliction, led to the numerous due process violations, due to misrepresentation of his investigation report, the report I was deprived of. The very reports Lt. Meunier's sanctions had been based up, Lt. Meunier based his fact findings upon the misrepresentation of William Begones.

29. Lt. Meunier fact findings were not based upon substantive evidence, no defense witnesses allowed, no witnesses, nor did Lt. Meunier check the nature of inmate Crumel's testimony, or just became part of the act of misprison.

30. Lt. Meunier stated that he would speak to inmate Momoh B. Fahnbulleh at lunch, rather then call inmate Momoh B. Fahnbulleh as witnesses and give testimony at kangaroo disciplinary hearing, and out right refused to call any other defense witnesses, date 7/24/07

31. Plaintiff upon speaking with correctional officers, came to learn, the evidence relied upon, was the past infraction with inmate James Grilli, as stated, "If Grilli had bite marks, then Evora is guilty of biting Crumel". "It's a history of the same patent."

PROOF OF REPRISAL TACTICS

32. On the 7th day of August, 2007, during the moring disciplinary hearing held by Lt. Meunier, regarding inmate Tangoaro, who was before the disciplinary board for an assault upon correctional officer Sal Doe, of Seg. Unit, inmate Tangoaro did commit assault while already in the Segregation unit, for two (2) other prior infractions. Due to the inmate being White, as is always the case with DOC, he only received 15 days loss of good time credits, and 15 days segregation, and no downgrade. Captain Bannon and Lt. Hollis ordered the inmate booked (sanctioned) for assault upon officer Sal Doe.

33. Now Plaintiff received 90 days loss of good-time credits, 90 days segregation, and downgrade to Maximum Security, for alleged assault upon inmate Crumel. For the record when Plaintiff was assaulted and received broken nose, broken eye socket, sutures, and undergone plastic surgery. The White racist inmate that assaulted the Plaintiff, only received 20 days loss of good-time credits, 20 days in Segregation, and no downgrade.

34. Warden Review: Stephen Boyd, Warden denied the Plaintiff's appeal on August 7, 2007, at 1:02:34 PM. See exhibit (B) and (C) attached. This action was in complete violation of both Wolff Rules and the Morris Rules, "1980" version of the Morris Rules.

CONSTITUTIONAL VIOLATIONS

35. Fourteenth Amendment Due Process violations, and Equal Protection of the Laws. The unjustified denial of witnesses, conviction of disciplinary offense without supporting evidence, and the failure to give a meaningful statement of reasons for the decision are plain violations of due process. Baxter v. Palmigiano, 425 U.S. 308, 47 L. Ed 2d 810, 96 S. Ct. 1551 (1975) (Under Rhode Island law, disciplinary decisions must be based on substantial evidence manifested in the record of the disciplinary proceeding.")

36. The due process violations, are also contempt violations of the "1980" version of the Morris Rules. See attached exhibits: 1(A) and 2(B) of letters from: Robert W. Lovegreen, U.S. Magistrate Judge, dated, June 3, 2002, "Unless a matter involving the Morris Rules properly alleges a federal constitutional violation as required by the Doctor decision, the matter is properly brought in state court, not federal court. This court did not state that the Morris Rules were ineffective or that

the ACI personnel were not bound by them. Exhibit 2(B): Letter from; Robert W. Lovegreen, U.S. Magistrate Judge, dated, July 15, 2002, "The 1970 version of the Morris Rules was replaced and finalized by the 1980 version. Whatever the 1980 version states is what currently in effect." "Insofar as the federal court is concerned, the 1980 version of the Morris Rules is the only set of rules currently in effect." "The 1970 version has been replaced by the 1980 version."

37. The Supreme Court held in Wolff v. McDonnell, that due process safeguards must be observed in prison disciplinary proceedings. Wolff v. McDonnell, 418 U.S. 539, 556-59, 94 S. Ct. 2963 (1974). The prisoners in Wolff had been deprived of statutory "good-time", a state-created liberty interest, but the Court stated due process requirements also applied to placing prisoners in solitary confinement. Wolff v. McDonnell, 418 U.S. at 571-72 n. 19.

38. Wolff, since Wolff, courts have pointed out that disciplinary rules in themselves create a liberty interest protected by due process. The hearing office, Lt. Meunier violated Plaintiff's due process, liberty, and free exercise of religion, and the right to partake in the worship of Plaintiff's religion, Friday (Jumuah Service) and Ramandan. Placing Paintiff in segregation in clear contempt of

the "1980 version of the Morris Rules, Actions taken by a Disciplinary Board may be as follows: 5. One to thirty days placement in punitive segregation; 4. Temporary loss of specified privileges within inmate classification not to exceed thirty days; 8. A board decision must be based upon substantive evidence. See Morris v. Travisono, 499 F. Supp. 149 (1980) page 170 Appendix.

39. Lt. Meunier held a kangaroo disciplinary board hearing in violation and contempt of the "1980" version of the Morris Rules and Wolff Rules. This has led to federal constitutional violations, of the First, Eighth, and Fourteenth Amendments. First Amendment is liberty, and religious practice, worship, placing Plaintiff in the segregation unit in violation of Morris Rules has also created a Fourteenth Amendment due process violation, and equal protection of the laws violation. These violations have in fact violated Plaintiff's, Constitution Rights protected, under the United States Constitutions.

40. Lt. Meunier denied any and all witnesses at the disciplinary hearing, that would offer proof, that Plaintiff did not assault inmate Crumel. This is in fact due process violation that led to, liberty violations of good-time credits, being placed in the segregation unit, and religious services, and programs.

Haines v. Kerner, 404 U.S. 519, 530-31, 92 S. Ct. 594, 595-96, 30 L. Ed 2d 652, 654 (1972), (Stating that prisoner should be allowed opportunity to offer proof unless it appears beyond doubt that prisoner can prove no facts to support his claim.)

41. In compliance with the 1980 version of the Morris Rules which it is clear William Begones, Lt. Meunier, and Warden Boyd, et al., are in contempt of the 1980 version of the Morris Rules and the rulings of United States District Court for the District of Rhode Island.

42. Morris Rules "1980" version clearly state that, "If the inmate thinks the charge against him is untrue (in whole or in part), he may present information available to him and others. Said presentation shall include the right to call a reasonable number of witnesses, both adverse and favorable and examine said witnesses.

43. In so holding, the Court distinguished Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), in which it found that Nebraska inmates were entitled to due process protections when they were deprived of good-time credits because of misconduct.

44. The Plaintiff therefore avers constitutional violations, and federal orders being violated of Morris Rules, contempt of Morris Rules.

CLAIMS

FIRST CAUSE OF ACTION

45. The actions of William Begones, Lt. Meunier, and Warden Boyd, Defendants #1 through #3, as stated within paragraphs 1 through 44 of this complaint, are violations of the First, and Fourteenth Amendments of the United States Constitution.

46. The actions of Defendants #1 through #3 as stated in paragraphs 1 through 44 of this complaint, violated the Eighth Amendment protection against cruel and unusual punishment. Housing Plaintiff in segregation due to reprisal tactics, and in contempt of the "1980" version of the Morris Rules.

SECOND CAUSE OF ACTION

47. The actions of Defendants #1 through #3, as stated in praragraphs 1 through 44 of this complaint, violated state and federal law and established policy at the Rhode Island Department of Corrections.

48. The actions of Defendants #1 through #3, as stated in paragraphs 1 through 44 of this complaint, violated Wolff Rules, Morris Rules, and Code of Ethics 3.14-1 Rhode Island Department of Corrections.

## THIRD CAUSE OF ACTION

49. That the actions of Defendants #1 through #3, as stated in paragraphs 1 through 44 of this complaint, violated 18 U.S.C. 241. Conspiracy against rights and, 242. Deprivation of rights under color of law.

## PRAYER OF RELIEF

A. Issue Declaratory Relief against the named Defendants Stating they did in fact violate the Plaintiff's due process rights, liberty housing him in Segregation, and denied him the freedom of religion and Jumu'ah prayer Services, and the right to partake in Ramadan. That this was done as a reprisal tactic due to prior complaint filed to federal court.

B. Compensatory damages in the amount of $20.00 per day Plaintiff was housed in Segregation unit, against the Defendants Jointly and Severally.

C. Punitive damages in the amount of $150.000 against the Defendants Jointly and Severally.

D. A trial on all issues triable by Jury.

E. Defendants pay Plaintiff's cost in this Suite.

F. Any addictional relief this court deems just, proper, and equitable.

Respectfully Submitted

Date: 8/29/07

Juan G. Evora

Juan G. Evora, Pro Se
a/k/a Abdul Qadeer Asadullah Mujahid
Medium Moran Facility
P.O. Box 8274
Cranston, R.I. 02920

VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged on information and belief, and, as to those, I believe them to be true. I certify under the penalty of perjury that the foregoing is true and correct.

Executed at Cranston, Rhode Island on the date of August 29, 2007.

Juan G. Evora
Signature
Juan G. Evora, Pro Se
a/k/a Abdul Qadeer Asadullah Mujahid

CERTIFICATION OF SERVICE
[28 U.S.C. 1746]

The undersigned hereby certifies that on the 29 day of August, 2007, he mailed a true copy of civil action complaint to all three Defendants, Stephen Boyd, Warden, and, Lt. Meunier at Medium Moran Facility P.O. Box 8274, Cranston, R.I. 02920, William Begones (S.I.U.) at Administration Building-B, 40 Howard Avenue, Cranston, Rhode Island 02920.

Juan G. Evora
Juan G. Evora, Pro Se
a/k/a Abdul Qadeer Asadullah Mujahid